**CIVIC CENTER MOTORS, LTD., d/b/a White Plains Honda; Paragon Motors of Woodside, Inc., d/b/a Paragon Honda; Worldwide Motors, Ltd., d/b/a Paragon Acura, Plaintiffs**

v.

**MASON STREET IMPORT CARS, LTD. d/b/a Greenwich Honda, Marc Wolpo, Rosa Cruz, Scott Jordan, Lou Sollecito, Defendants**

No. 04 CIV. 8875(SCR).

United States District Court,
S.D. New York.

Sept. 6, 2005.

Craig M. Bonnist, Bonnist & Cutro, LLP, White Plains, NY, for Plaintiffs.

Joshua A. Marcus, Franklin Gringer & Cohen, P.C., Garden City, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

This action, brought pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, and the laws of the State of New York, seeks compensation for unauthorized access to a specialized computer system. For the reasons set forth below, this court finds that the complaint, as written, does not state a claim that would entitle the Plaintiff to relief.

## I. Background

### A. Factual History

Civic Center Motors, Ltd., d/b/a White Plains Honda ("White Plains Honda"), Paragon Motors of Woodside, Inc., d/b/a Paragon Honda ("Paragon Honda"), and Worldwide Motors, Ltd., d/b/a Paragon Acura ("Paragon Acura"; White Plains Honda, Paragon Honda, and Paragon Acura are collectively referred to herein as the "Plaintiffs") are car dealerships in White Plains and Woodside, New York.

Marc Wolpo ("Wolpo") worked for White Plains Honda from May 2003 to June 2004. Subsequently, he became the General Sales Manager of Mason Street Import Cars, Ltd. d/b/a Greenwich Honda ("Greenwich Honda"), a car dealership in direct competition with the Plaintiffs. Rosa Cruz ("Cruz") worked for Paragon Honda from November 2000 to March 2004 and Paragon Acura from March 2004 to August 2004. Shortly after leaving Paragon Acura, she became an employee of Greenwich Honda. Lou Sollecito ("Sollecito") is the owner of Greenwich Honda and Scott Jordan ("Jordan"; Greenwich Honda, Wolpo, Cruz, Sollecito, and Jordan are collectively referred to herein as "Defendants") is the general manager of Greenwich Honda.

Plaintiffs provide a web-based service which gives potential customers the opportunity to visit Plaintiffs' website and either obtain a price quote for a vehicle or submit information to obtain a credit check. A specially designed database, called "Buzz Track," compiles and arranges the information submitted, and Plaintiffs use the information as a marketing tool and to provide price quotes. Plaintiffs intend that the information in the database will be used exclusively by their employees. In order to keep the information confidential, the database is accessible only to employees after they enter their usernames. The

scope of an employee's access varies based on his or her specific needs.

On October 29, 2004, White Plains Honda learned that an unauthorized user had accessed their database. A customer advised them that, shortly after entering information on the White Plains Honda website to obtain a price quote, he received a call from Wolpo, asking about the on-line quote and offering a better price. BZ Results, the web-based provider for Plaintiffs' computer system, investigated the matter and determined that on nine occasions the White Plains Honda's website had been accessed without authorization by outside dealerships.

On October 30, 2004, Jordan admitted that Cruz accessed the database from her home and from Greenwich Honda. Plaintiffs allege that Defendants must have been aware that the information was confidential, partly because personal usernames are necessary to access the website. In addition, Plaintiffs allege that Defendants incorrectly informed Plaintiffs' potential customers that Paragon Honda and Greenwich Honda shared a website.

### B. Procedural History

On November 9, 2004, Plaintiffs brought this action pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.A § 1030(a)(5)(A)(iii), (a)(5)(B)(i). In addition to the claim under the CFAA, Plaintiffs allege four causes of action arising under New York State law: misappropriation of trade secrets, tortious interference, deceptive business practices, and false advertising.

Plaintiffs claim two kinds of damages: lost profits due to the competitive edge gained by Defendants through their wrongful access, reproduction, and deletion of the information obtained through Buzz Track, and compensation for their investment in the development and advertisement of the computer system, the value of which has been diminished by the loss of its confidentiality.

Plaintiffs have also filed a motion for a preliminary injunction ordering the return of their information and prohibiting the future solicitation of prospective customers, misappropriation of confidential information, and making of false representations.

Jordan, Greenwich Honda, Sollecito, and Wolpo filed a motion to dismiss [1] pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs' first cause of action fails to state a claim which entitles them to relief under CFAA and that, as a result, there is no basis for federal jurisdiction over the state claims.

### II. Analysis

### A. Background

Defendants moved under both FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6) to dismiss the complaint. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. In contrast, a dismissal under Rule 12(b)(6) is a dismissal on the merits of the action—a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996) (noting the difficulties of distinguishing between the two). Therefore, the court must first have assumed jurisdiction over the matter before

---

**1.** Cruz filed a motion for an extension of time to file an answer, and the motion was granted. However, she has not provided an answer within the time allotted. Therefore, she will not be considered in this motion to dismiss.

a 12(b)(6) motion can be decided. *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

As the Second Circuit has noted, "*Bell v. Hood*, instructs that, when the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148 (2d Cir.1984) (internal citations omitted). Plaintiffs' assertion of jurisdiction under the CFAA is not wholly insubstantial and frivolous. Therefore, this court has jurisdiction, and an examination under 12(b)(6), rather than under 12(b)(1), is appropriate.

### B. Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted

#### i. CFAA claim

The CFAA provides for a civil right of action. 18 U.S.C. § 1030(g). Plaintiffs allege that Defendants violated § 1030(a)(5)(A)(iii), which makes it a violation to "cause damage" through "intentionally access[ing] a protected computer."

Section 1030(g) provides that a civil action may be brought only if the conduct involves one of the factors in clause (i), (ii), (iii), (iv), or (v) of § 1030(a)(5)(B). 18 U.S.C. § 1030(g). Here, the applicable section is (a)(5)(B)(i), which permits an action to be brought if plaintiff's losses amount to "at least $5,000 in value" during "any 1–year period."

Crucially, § 1030(e)(11) defines "loss" as any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service.

Cases in this jurisdiction have found that "losses" under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468, 474 (S.D.N.Y.2004); *see also Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 252 (S.D.N.Y.2000). In *Nexans*, Judge Cedarbaum thoroughly examined the legislative history of the CFAA and various courts' interpretation of "loss" and determined that revenue lost because a defendant used unlawfully gained information to unfairly compete was not a type of "loss" contemplated under the CFAA. *Nexans*, 319 F.Supp.2d at 478.

In *Nexans*, Plaintiffs sought compensation for the costs of holding meetings to discuss the consequences of their competitor's gain in competitive edge resulting from their use of unlawfully gained information. *Nexans*, 319 F.Supp.2d at 476. Crucially, the discussions did not focus on computer investigations or repairs and Plaintiffs did not allege that they discussed measures taken to prevent unauthorized access to the computer system in the future. Because the discussions did not address the inoperability of the computer systems, Judge Cedarbaum determined that the costs incurred during the meetings were not compensable under the CFAA. And applying the same principle, Judge Cedarbaum found that lost business opportunities resulting from Defendants' use of improperly gained information were also not the result of the computer system being inoperable and, therefore, were not compensable under the CFAA either.

*Nexans,* 319 F.Supp.2d at 477 citing *Register.com, Inc.,* 126 F.Supp.2d at 252 (lost good will or lost business opportunity is compensable only if it resulted from the impairment or unavailability of data or systems). This court agrees with Judge Cedarbaum's analysis of recoverable "loss" under the CFAA. As such, costs not related to computer impairment or computer damages are not compensable under the CFAA.

■ In the instant case, Plaintiffs are seeking compensation for lost profits resulting from Defendant's unfair competitive edge and for their now wasted investment in the development and compilation of the database information. However, neither of these kinds of losses are the result of computer impairment or computer damage. Therefore, they are not compensable "losses" under the CFAA.

■ In their reply papers, Plaintiffs argue that they suffered additional losses, including losses resulting from data corruption, the cost of responding to and repairing the computer problems, and exposure to liability to customers for breach of privacy. None of these damages were alleged in the complaint, however. Therefore, even assuming these allegations would constitute grounds for relief under the CFAA, they cannot be considered in opposition to a motion to dismiss. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2nd Cir.1991) (In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint).

Because the allegations of losses in the complaint fail to state a valid claim for relief under the CFAA, Plaintiff's CFAA claim must be dismissed.

### ii. State Law Claims

Plaintiffs also assert four causes of action arising under New York State law: misappropriation of trade secrets, tortious interference, deceptive business practices, and false advertising. Since the federal claim has been dismissed, the exercise of supplemental jurisdiction over the state law claims is discretionary. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). At this early stage of litigation, this court declines to exercise jurisdiction over the remaining state law claims. Therefore, all state law claims are dismissed.

### iii. Preliminary Injunction

A party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. *See, e.g., Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). Having failed to assert a valid claim for relief, Plaintiffs have not demonstrated a likelihood of success on the merits. Therefore, the Plaintiffs' motion for a preliminary injunction is denied.

### III. Conclusion

For the foregoing reasons, Respondent's motion to dismiss is GRANTED without prejudice.

The Plaintiff's motion for a preliminary injunction is DENIED.

It is so ordered.